**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Criminal Action No. 24-cr-00083-NYW-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

                                         **Level 1 Restricted**

1.    DYLAN ANDREW MILLER,

      Defendant.

---

### ORDER ON RULE 702 MOTIONS

---

Defendant Dylan Andrew Miller ("Defendant" or "Mr. Miller"), a former Loveland Police Department officer, was charged with one count of deprivation of rights under color of law in violation of 18 U.S.C. §§ 242 and 250(a), (b)(1) after he allegedly sexually assaulted a minor while on duty. [Doc. 1]. Defendant and the Government each move to exclude an expert witness endorsed by the other Party. *See* [Doc. 66; Doc. 67]. For the reasons set forth below, the Government's Motion to Exclude is respectfully **GRANTED in part** and **DENIED in part** and Defendant's Motion to Exclude is respectfully **DENIED**.

### BACKGROUND

The Court set forth this case's underlying factual allegations in a prior order, *see* [Doc. 92], and incorporates that recitation herein. Broadly, the Government alleges that on or about August 4, 2024, Defendant sexually assaulted a minor ("Minor #1")[1] in North

---

[1] The Court refers to all minors using pseudonyms, consistent with the Parties' practice.

Lake Park in Loveland, Colorado while on duty as a Loveland Police Department officer. [Doc. 1 at ¶¶ 3, 5]. The United States (or the "Government") now moves to exclude the testimony of Dr. Brenna Tindall ("Dr. Tindall"), endorsed by Defendant to provide testimony about the forensic interview of Minor #1. [Doc. 66 (the "Government's Motion to Exclude")]. Defendant similarly moves to exclude the expert testimony of Special Agent Ryan Hammer ("Agent Hammer"), endorsed by the Government to provide expert testimony about location data associated with Defendant's personal and work phones and personal vehicle. [Doc. 67 ("Defendant's Motion to Exclude")].

## LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "In essence, Rule 702 permits a court to admit expert testimony that is 'both reliable and relevant.'" *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)). The party proffering expert testimony has the burden to show its admissibility by a preponderance of the evidence. *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011).

It is well established that trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony is reliable and relevant. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993). To fulfill that gatekeeper function, the trial court first analyzes whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render their opinions. Fed. R. Evid. 702; *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019). If the expert is qualified, the trial court must determine whether the expert's opinions are reliable by evaluating the underlying reasoning and methodology. *Bill Barrett Corp.*, 918 F.3d at 770. The court must also determine whether the expert's opinions are "applicable to a particular set of facts," i.e., are relevant to the case at hand. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003). This inquiry "encompasses Rule 702's requirement that the evidence help the trier of fact to understand the evidence or to determine a fact in issue." *Sanderson*, 976 F.3d at 1172 (cleaned up).

## ANALYSIS

### I.     The Government's Motion to Exclude

The Government moves to exclude Dr. Tindall's testimony in its entirety. *See generally* [Doc. 66]. The Court addresses the Government's arguments on an opinion-by-opinion basis below.

#### A.     Opinion About Sexually Transmitted Infection

The Court first addresses the Government's request to exclude Dr. Tindall's opinions referencing a sexually transmitted infection. *See* [Doc. 66 at 5; Doc. 66-1 at 3]. The Government argues that the opinion should be excluded because (1) Dr. Tindall is

not qualified to offer the opinion; (2) the opinion is not supported by reliable methods; (3) the opinion is irrelevant; and (4) the danger of unfair prejudice outweighs its probative value.  [Doc. 66 at 5–10].  Defendant responds that the Government's request "is moot because the defense will not be eliciting opinions on that subject from Dr. [Tindall]."  [Doc. 77 at 1 n.1].  Even so, in an abundance of caution, the Court makes clear that Dr. Tindall is precluded from offering this opinion at trial.  The opinion is not relevant to this case, and any probative value the opinion is substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 401 (evidence is relevant if it tends to make a fact of consequence more or less probable); Fed. R. Evid. 403.[2]  The Government's Motion to Exclude is **GRANTED** as to this opinion.

### B.    Forensic Interview Opinions

Next, Dr. Tindall provides in her initial disclosure seven opinions critiquing or discussing the circumstances of the forensic interview of Minor #1.  Those opinions are summarized as follows:

1.    Dr. Tindall has "concerns that there was no exploration of the inconsistencies in [Minor #1's] various accounts of details."

2.    Dr. Tindall finds Minor #1's reference to a "no-no box" to be "highly developmentally immature," and Dr. Tindall would have "explored [Minor #1's] terminology."  Dr. Tindall also opines that the interviewer should have asked for more detail about the alleged assault.

3.    Dr. Tindall states that "specificity and assuredness of [Minor #1's] details should have been considered."

---

[2] Moreover, Defendant has not moved to introduce the evidence under Rule 412, and it does not appear that he intends to do so.  *See* [Doc. 77 at 1 n.1]; *see also United States v. Davis*, No. 13-cr-00589-CAS, 2015 WL 519455, at *3 (C.D. Cal. Feb. 5, 2015) (evidence of venereal disease is covered by Rule 412).

4.      Dr. Tindall opines that "it would have been necessary for [Minor #1] to explain where she heard that [Defendant] had issues with other juvenile females previously."

5.      Dr. Tindall opines that Minor #1 "should have been questioned about her varying accounts of what she told various people about what had occurred."

6.      Dr. Tindall believes that "some details about how the disclosure occurred should have been further addressed/explored," noting that "[i]t is concerning that [Minor #1's] grandparent's first response to the situation was that [Minor #1] may have made this up to get out of trouble."

7.      Dr. Tindall states that she has concerns "about the absence of body camera footage when the victim identified Mr. Miller."

[Doc. 66-1 at 1–2].  In addition, Defendant has submitted a "revised summary" of her opinions, wherein Dr. Tindall states that she "would offer testimony related to [her] opinion that some of the statements made during [Minor #1's] forensic interview should be interpreted with some caution due to various factors," including:

(1) there were significant inconsistencies and discrepancies [she] observed from watching the forensic interview and observing the alleged victim, (2) there was a lack of clarification of specific statements made during the forensic interview, and (3) there was a general lack of completeness in the protocol typically done with forensic interviews.

[Doc. 77-1 at 5].  She also seeks to offer an "opinion about [her] concerns about how the actions of . . . the detective . . . did not comply with police standards and proper interviewing techniques related to alleged minor victims of sexual assault in various parts of the investigation."  [*Id.* at 6].  Finally, she states it is her opinion that law enforcement "asked leading questions, as opposed to open-ended and clarifying questions, and for that reason, the forensic interview was conducted in an overly suggestive manner."  [*Id.*].

The Government argues that Dr. Tindall is not qualified to offer these opinions, [Doc. 66 at 4]; that these opinions are irrelevant, [*id.* at 5–7]; and that these opinions are

unreliable, [*id.* at 7–8].   Alternatively, the Government argues that exclusion of these opinions is appropriate under Rule 403.  [*Id.* at 8–10].

### 1.    Qualifications

The Government argues that Dr. Tindall is unqualified to offer opinions about Minor #1's forensic interview because she does not have experience, training, or expertise in interviewing minors in the course of criminal investigations.  [Doc. 66 at 4].  It notes that Dr. Tindall's curriculum vitae demonstrates experience in evaluating or interviewing adult sex offenders in custody cases, but it argues that this experience does not render Dr. Tindall qualified to opine about forensic interviews of minors in criminal investigations. [*Id.* at 4–5].  The Government further notes that "Dr. Tindall has never testified as an expert in the area of child forensic interviewing."  [*Id.* at 5].

Defendant responds that Dr. Tindall is sufficiently qualified, pointing out that her opinions are "based on [her] prior experience reviewing documentation in over a thousand sex assault cases," [Doc. 66-1 at 1]; that she runs a private practice "specializing in forensic evaluations, forensic consulting, and forensic training," [Doc. 66-2 at 2]; and that she has previously provided expert testimony concerning "false memories, [and] distorted memories," [Doc. 66-3 at 1].  *See* [Doc. 77 at 2].  He also argues that Dr. Tindall's "revised summary" "elaborates on her specific qualifications to provide her opinions."  [Doc. 77 at 3].  Finally, Defendant argues that any "gaps" in Dr. Tindall's qualifications go to the weight of her testimony, not its admissibility.  [*Id.* at 2–3].

Dr. Tindall's original summary of her opinions states that she is a licensed psychologist who has "been completing court-ordered psychosexual evaluations since 2010[,] domestic violence evaluations since 2019, and general psychological evaluations

since 2009." [Doc. 66-1 at 1]. In her "Revised Summary of Possible Expert Testimony," Dr. Tindall's says that her "specialty focus is forensic psychology." [Doc. 77-1 at 1]. She represents that she as "reviewed a bulk of peer-reviewed articles and books on [forensic interviewing] and [is] well acquainted with the protocols related to forensic interviewing." [*Id.* at 3]. She lists "more specific information that would qualify [her] to opine about forensic interviews," but many of her examples are generic and missing detail. *See, e.g.*, [*id.* ("I have reviewed hundreds of forensic interviews throughout my career and offered various opinions related to the victim dynamics and skills of the forensic interviewer. . . . I have provided training at various times to police departments in multiple areas."); *id.* at 4 ("I am regularly hired to consult on legal and domestic relations cases, review records, videos, interviews, etc., and provide an opinion about issues related to false allegations, inconsistencies in records or statements, clinical behaviors of multiple parties involved in the cases, etc.")].

With respect to Dr. Tindall's qualifications to render opinions regarding the forensic interview of Minor #1, the Court is cognizant that "Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training." *Squires*, 829 F. Supp. 2d at 1048. A court "should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court." *Id.* After considering Dr. Tindall's experience and knowledge in its entirety, the Court finds that—for most of her provided opinions— she is qualified to offer opinions regarding forensic psychology as applied to forensic interviews of minors. Most relevant to the Court's conclusion is Dr. Tindall's "specialty

focus [in] forensic psychology," her statement that she has reviewed a "bulk of peer-reviewed articles and books on" forensic interviewing, and her statement that she has "reviewed hundreds of forensic interviews throughout [her] career and offered various opinions related to the victim dynamics and skills of the forensic interviewer." [Doc. 77-1 at 1, 3]. In addition, Dr. Tindall has experience conducting interviews intended to ascertain the veracity of the interviewee's prior claims, albeit in a different context than the one present here. *See* [*id.* at 3 ("I was hired . . . to evaluate a victim . . . to decide whether she was malingering her symptoms"); *id.* ("I was asked to . . . meet with the defendant, assess for malingering, and offer an opinion about the veracity of his claims and the consistency of his disclosures")]. While Dr. Tindall does not appear to have specific experience in conducting forensic interviews of minors in criminal investigations, this does not render her unqualified to offer opinions about forensic interviewing or victim dynamics. *See* Fed. R. Evid. 702 (an expert may be qualified under Rule 702 on a number of grounds, including knowledge, training, and education); *cf. Mathison v. Wilson*, No. 14-cv-03345-RM-KLM, 2017 WL 4227243, at *2 (D. Colo. Mar. 21, 2017) ("To be qualified, an expert need not have any certain profession."); *United States v. McCluskey*, No. 10-cr-02734-JCH, 2013 WL 12334168, at *11 (D.N.M. Apr. 29, 2013) ("A witness need not have the particular degree which the Court believes would be most appropriate."). Most of the Government's concerns regarding Dr. Tindall's lack of experience go to the weight, and not the admissibility, of her opinions and may be appropriately challenged on cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence."); *Ramos v. Banner Health*, 426 F. Supp. 3d 815, 819 (D. Colo. 2019).

However, based on Defendant's submissions, the Court concludes that certain offered opinions fall outside Dr. Tindall's qualifications, as follows:

***Opinions About "[P]olice [S]tandards."*** Dr. Tindall seeks to offer opinions about "the absence of body camera footage when the victim identified Mr. Miller," [Doc. 66-1 at 2–3]; *see also* [Doc. 77-1 at 7], that the interviewer "did not comply with police standards . . . in various parts of the investigation," [Doc. 77-1 at 6], and that "the lineup procedure" used in Minor #1's identification of Defendant "is concerning and improperly based on police practices and protocol," [*id.* at 7]. But there is no indication that Dr. Tindall has any particularized experience in, training in, or knowledge about "police standards" or "police protocol" or whether she has any particularized knowledge about whether law enforcement officers typically engage their body-worn cameras when interviewing minors during a criminal investigation. *See* [Doc. 66-1; Doc. 77-1]. In fact, all of the law-enforcement-related experience listed in her summaries is presented in only vague terms. *See, e.g.*, [Doc. 77-1 at 3 ("I have provided training at various times to police departments in multiple areas."); *compare id.* at 7 (vaguely referencing her "experience and training on how law enforcement is supposed to interview a minor child who is allegedly a sexual assault victim"), *with id.* at 2–4 (not mentioning any such training with any specificity in her list of qualifications)].[3] And without any specific information in Dr. Tindall's

---

[3] And even if Dr. Tindall were qualified to offer these opinions, she does not explain the basis for them, or how it relates to her opinions about the propriety of the forensic interview conducted of Minor #1 as required by Rule 702. Accordingly, the Court would otherwise conclude that Dr. Tindall's opinions about Minor #1's grandmother's reaction is not relevant and is not reliable, *see infra* Section I.B.3. Further, any factual testimony

disclosures—or argument from Defendant—articulating how Dr. Tindall is qualified to offer opinions on broad topics such as "police standards" or "police protocol," the Court cannot conclude that she is. *See United States v. Rodella*, No. 14-cr-02783-JB, 2014 WL 6634310, at \*21 (D.N.M. Nov. 19, 2014) (concluding that expert was not qualify to testify on "nationally accepted police standards" where he had only served as an officer in a single city).

   ***Opinions Discussing the Grandparent's Reaction to the Report.*** Finally, Dr. Tindall states that "[i]t is concerning that [Minor #1's] grandparent's first response to the situation was that [Minor #1] may have made this up to get out of trouble." [Doc. 66-1 at 2]; *see also* [Doc. 77-1 at 6]. As a preliminary matter, the Court is not persuaded that this opinion about a particular family's particular dynamics is based on any sort of specialized knowledge so as to render it an expert opinion under Rule 702. *See* Fed. R. Evid. 701 (lay witness testimony is "not based on scientific, technical, or other specialized knowledge"). Moreover, even if it were construed as an expert opinion, Dr. Tindall has not provided any explanation of her qualifications to opine about *a third party's* reaction to a report of sex assault, and the Court cannot ascertain any such qualifications from her disclosures.[4]

---

about the grandmother's reaction to Minor #1's report by Dr. Tindall is likely inadmissible for a variety of reasons.

[4] Moreover, this portion of Dr. Tindall's report reads as a list of reasons why Minor #1 could be deemed not credible. *See, e.g.*, [Doc. 66-1 at 2 "It is possible that her grandmother's question [about the assault] could have been used as an opportunity for the victim to create a story to serve her purpose.")]. Such opinions are unreliable and irrelevant, as they are speculation not grounded in any data or methodology, and intrude on the jury's exclusive function of determining the credibility of witnesses. *See infra* Section I.B.2. The Court will not permit such testimony at trial.

The Court finds that Dr. Tindall is not qualified to offer opinions about the lack of body camera footage capturing the interview, whether the interview complied with "police standards" or police protocols, or the grandparent's initial reaction to Minor #1's report. The Government's Motion to Exclude is **GRANTED** with respect to those opinions.  Dr. Tindall is otherwise qualified to testify about the interviewing process.  *See* Fed. R. Evid. 702.

### 2.    Relevance

Next, the Government argues that Dr. Tindall's opinions should be excluded because they are not relevant.  [Doc. 66 at 5].  It asserts that the only facts of consequence in this case are whether Defendant did or did not assault Minor #1, and that whether the interviewers "employed certain interviewing techniques or explored certain topics during a particular interview . . . is not relevant to whether the charged incident occurred as alleged."  [*Id.* at 6].  It also contends that whether or not Minor #1's identification of Defendant was captured on body-worn camera footage is not relevant to whether the act occurred.  [*Id.*].  In response, Defendant asserts that "many critical details of [Minor #1's] story changed over the course of the multiple interviews," and he argues that testimony about how interview techniques can impact an alleged victim's memory is "highly relevant."  [Doc. 77 at 6].

Here, Defendant denies Minor #1's allegations and presumably anticipates challenging Minor #1's credibility.  As a result, testimony about the mechanics of Minor #1's forensic interview, in which she disclosed details of the alleged assault to law enforcement, could bear on an ultimate issue in this case.  "Courts routinely allow both defense and prosecution experts to testify regarding forensic interviews and suggestibility

generally," *United States v. Dudley*, No. 22-cr-00006-RAW, 2023 WL 1781793, at *1 (E.D. Okla. Feb. 6, 2023) (collecting cases), and the Court agrees with Defendant that Dr. Tindall's anticipated testimony is relevant to the case at hand, *see United States v. Parson*, No. 21-cr-00112-CVE, 2021 WL 5414248, at *2 (N.D. Okla. Nov. 19, 2021) (permitting forensic interviewing expert to testify "regarding the psychology of the disclosure process in child sexual abuse victims" as it was relevant to the alleged victim's credibility), *aff'd*, 84 F.4th 930 (10th Cir. 2023); *cf. United States v. Ogden*, No. 20-cr-00136-JFH, 2021 WL 789863, at *2 (E.D. Okla. Mar. 1, 2021) (permitting expert testimony on the disclosure process in sexual abuse cases because "[m]ost jurors are unfamiliar with matters of child sexual abuse and how victims respond"); *cf. United States v. Martinez*, No. 21-cr-01934-MV, 2025 WL 623707, at *2, *4 (D.N.M. Feb. 26, 2025) (permitting expert to testify and evaluate an interview in which the defendant made inculpatory statements).

However, while the Court will permit Dr. Tindall to offer her opinions about the interviewing process, the Court warns the Parties in an abundance of caution that it will <u>not</u> permit Dr. Tindall to offer any opinions "assessing the reliability or credibility of a [Minor #1's] accusations." *Dudley*, 2023 WL 1781793, at *1 (quoting *United States v. Rouse*, 111 F.3d 561, 571 (8th Cir. 1997)). "[T]he credibility of another is not an appropriate subject for expert opinion testimony," *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014), as such opinions "encroach[] upon the jury's vital and exclusive function to make credibility determinations, and therefore do[] not 'assist the trier of fact' as required by Rule 702," *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (quoting Fed. R. Evid. 702). Moreover, opinions about whether Minor #1 made

inconsistent statements would not assist the trier of fact, as ascertaining inconsistencies or consistencies within a witness's statements is within the common knowledge and experience of the average juror.  *See Rodriguez-Felix*, 450 F.3d at 1123 (to determine whether witness testimony will assist the trier of fact, courts consider whether the testimony is "within the juror's common knowledge and experience" and whether "it will usurp the juror's role of evaluating a witness's credibility").

This ruling includes, but is not limited to, Dr. Tindall's opinions that "there were significant inconsistencies and discrepancies [she] observed from watching the forensic interview and observing the alleged victim," that "[t]here were many inconsistencies in [Minor #1's] account of what occurred," [Doc. 77-1 at 5], that there were "varying accounts of what [Minor #1] told various people," [*id.* at 6], or that the details in Minor #1's report "were deemed completely inaccurate," [*id.* at 5].  And because Dr. Tindall is not qualified to testify about police investigative protocols, she may not rely on these statements to offer any opinions about whether the investigator should have conducted the interview differently.  To be clear, Dr. Tindall will be permitted to present, for example, her opinion that interviewers should have more thoroughly questioned Minor #1, so long as the opinion is based on the specific factual circumstances of the interview and does not weigh in on Minor #1's credibility or frame Minor #1's statements as inconsistent, varying, or not credible.

### 3.    Reliability

The Court's gatekeeper role functions to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quotation omitted).  "Under Rule 702,

where the expert testimony is non-scientific, 'reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it.'" *United States v. Medina*, No. 23-cr-00049-PAB-3, 2025 WL 873022, at *3 (D. Colo. Mar. 20, 2025) (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)).   If an expert relies primarily on her experience in forming her opinions, the expert "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee's note to 2000 amendments).

The Government argues that Dr. Tindall's opinions are not based on a reliable methodology.   [Doc. 66 at 7].   The Government's criticisms of Dr. Tindall's opinions include the fact that (1) for her first opinion, she cites broadly to literature and training— without explaining what type of literature or training she relies on, and (2) for her latter opinions, she provides no basis for them.   [*Id.* at 7–8].   It contends that Dr. Tindall's opinions "do not bear the hallmarks of reliability outlined by the Supreme Court," such as whether her opinions have been peer reviewed, are subject to professional standards, or are generally accepted in the relevant community.   [*Id.* at 8].   It maintains that if Dr. Tindall is relying solely on her experience to form her opinions, then she must explain how her experience led her to form her opinions, and she fails to do so.   [*Id.*].

Mr. Miller responds that Dr. Tindall's opinions are reliable because they are based on her "prior experience reviewing documentation in over a thousand sex assault cases," "the literature and training on forensic interviews," "research on trauma and memory," and her "experience, knowledge, and training" which Defendant says "are described

exhaustively in her CV and supplemental report." [Doc. 77 at 4–5 (quotations omitted)].[5]
However, Defendant does not address the heart of the Government's argument—that Dr.
Tindall fails to identify the specific training or experience that forms the basis of her
various opinions and fails to explain why that training or experience led to her conclusions.

The Court has extensively reviewed Dr. Tindall's revised summary.  Dr. Tindall
provides a lengthy recitation of her credentials, [Doc. 77-1 at 2–5], and then reaches a
number of conclusions about the forensic interview, [*id.* at 5–7].  The Court finds that the
following two opinions are sufficiently reliable under Rule 702:

**1.      Dr. Tindall's opinion that the interviewer should have asked for more
detail about the alleged assault and that there should have been more extensive
questioning.** [Doc. 66-1 at 1; Doc. 77-1 at 5, 6].  Dr. Tindall states that, "[b]ased on [her]
experience, knowledge, and training, the interviewer failed to ask relevant questions and
obtain critical information from the minor." [Doc. 77-1 at 6].  Dr. Tindall also states that
she has "concerns that there was no exploration of . . . [Minor #1's] various accounts of
details." [Doc. 66-1 at 1].  She explains that "the literature and training on forensic
interviews is that" inconsistencies are "explored by asking clarifying, open-ended
questions to understand the reason behind the inconsistency, without suggesting a
specific answer or pressuring the interviewee." [*Id.*].  Elsewhere, she explains that
"[a]nother standard in forensic interviews is to 'minimize suggestibility' and 'induce truth-
telling.'" [Doc. 77-1 at 6].  Though a close call, the Court finds that Dr. Tindall has

---

[5] Defendant also argues that Dr. Tindall's opinions are based on her "experience and
training on how law enforcement is supposed to interview a minor child who is allegedly
a sexual assault victim." [Doc. 77 at 5 (quoting [Doc. 77-1 at 7])].  But Dr. Tindall says
that this experience supports her opinion about the lack of body camera footage, *see*
[Doc. 77-1 at 7], which the Court has already excluded.

sufficiently explained, for *Daubert* purposes, the basis for this opinion. Of course, as explained above, Dr. Tindall cannot frame Minor #1's statements as "inconsistencies."

    **2.**    **Dr. Tindall's opinion that law enforcement asked leading questions, which resulted in an interview "conducted in an overly suggestive manner."** [Doc. 77-1 at 6]. Dr. Tindall opines that "[b]ased on her training and experience, it is [her] opinion that law enforcement asked leading questions, as opposed to open-ended and clarifying questions, and for that reason, the forensic interview was conducted in an overly suggestive manner." [*Id.*]. She also states that "[a]nother standard in forensic interviews is to 'minimize suggestibility' and 'induce truth-telling.'" [*Id.*]. Elsewhere, she states that she has "reviewed hundreds of forensic interviews," is "regularly endorsed" to opine about "susceptibility to inaccurately reported memories" and "memory recall and trauma," and has a "history of completing" independent medical examinations with sexual assault victims. [*Id.* at 3]. To the extent Dr. Tindall has opinions on the use of "leading" or "suggestive" questions during the interview, the Court finds that she has adequately explained those opinions. However, to the extent she otherwise opines that "[a]n overly suggestive interview can . . . result in th[e] minor child concluding that an assault occurred based on the leading and suggestive nature of the interview," [*id.* at 7], this opinion is not tied to any of Dr. Tindall's particular experience or other reference that Dr. Tindall identifies, *see* [*id.*], and Defendant has not demonstrated its reliability.

    For the remainder of her opinions, Dr. Tindall fails to meaningfully explain why her experience is a sufficient basis for her opinions, how she reasonably applied her experience to the facts of this case, or how her experience leads to the conclusions reached. Fed. R. Evid. 702 advisory committee's note to 2000 amendments. Indeed, for

these remaining opinions, she fails to create a connection to her experience at all.  *See, e.g.*, [Doc. 77-1 at 5 (Dr. Tindall opining that she "would have explored [Minor #1's] account of the alleged assault in much greater detail, given her age," but not tying this opinion to any specific experience); *id.* (stating that Minor #1's use of the term "no-no box" was "developmentally immature," but not explaining how her experience permits her to reliably offer this opinion)].[6]  But even where Dr. Tindall does state that her opinions are based on her experience, she fails to specifically identify which experience caused her to form her opinions and why that experience renders her opinion reliable.  For example, Dr. Tindall states that "[b]ased on [her] experience, knowledge, and training, the interviewer failed to ask relevant questions and obtain critical information from" Minor #1, [*id.* at 6], but she provides no further explanation tying this opinion to any of her experience.  Moreover, the vague assertion that the interviewer failed to ask "relevant questions" or obtain "critical information" does little to inform the Court about the substance of the opinions, let alone whether those opinions are reliable.

Even where her opinions are not experience-based, Dr. Tindall fails to provide sufficient detail for the Court to determine reliability; she opines, for example, that Minor #1's "specificity and assuredness of her details should have been considered," stating that "[t]he research on trauma and memory suggests that specific information about particular events is typically challenging to recall."  [*Id.* at 5].  But Dr. Tindall never

---

[6]  Moreover, Dr. Tindall's opinion that Minor #1 used developmentally immature terminology during the forensic interview is not tethered to any of her other opinions about the mechanics of the interview or the questions asked during the interview.  For example, Dr. Tindall does not offer any opinions about how the interviewer should have addressed or explored Minor #1's terminology during the interview.  *See* [Doc. 66-1 at 1; Doc. 77-1 at 5].  For these reasons, the Court cannot conclude that this opinion is sufficiently reliable.

identifies *which* research forms the basis of her opinion.  *See* [*id.*].  While she includes a list of six articles on a "References" page at the end of her supplemental summary, *see* [*id.* at 8], none of her opinions are tied to these articles or any other sources.  This lack of development weighs against reliability.  *See Rodriguez-Felix*, 450 F.3d at 1126 (affirming trial court's determination that witness opinions were not reliable where the expert "fail[ed] to sufficiently reference specific and recognized scientific research" supporting his conclusions, as "[t]he requirements of *Daubert* are not satisfied by casual mention of a few scientific studies"); *August v. Urquhart*, No. 21-cv-01338-CMA-MEH, 2022 WL 16745769, at *3 (D. Colo. Sept. 20, 2022) (excluding expert with "exceptionally vague" expert report who did not identify how her research impacted her final conclusions); *cf. McCluskey*, 2013 WL 12334168, at *8 (citations to studies and articles about a particular topic did not demonstrate that the witness was an expert in that topic).

Defendant's Response similarly fails to elucidate a reliable basis for Dr. Tindall's opinions.  Under Rule 702, "the proponent of expert testimony must show that the witness' experience, and resultant specialized knowledge, is sufficiently related to the issues and evidence."  *Vigil v. Burlington N. & Santa Fe Ry. Co.*, 521 F. Supp. 2d 1185, 1204 (D.N.M. 2007).  Here, Defendant's cursory argument directing the Court to Dr. Tindall's general statements is not enough.  Defendant cannot direct the Court to a laundry list of Dr. Tindall's experience, which largely lacks detail, and ask the Court to conclude that the laundry list makes Dr. Tindall's opinions reliable.  *See United States v. Jacoby*, No. 10-cr-00502-MSK, 2012 WL 3068794, at *5 (D. Colo. July 26, 2012) (excluding opinion where the expert had not "identified any particular experience upon which his opinion . . . [could] reliably be premised"), *aff'd sub nom. United States v. Zar*, 790 F.3d 1036 (10th

Cir. 2015); *Cox v. Glanz*, No. 11-cv-00457-JED-FHM, 2014 WL 916644, at *3 (N.D. Okla. Mar. 10, 2014) (excluding testimony where the expert "[did] not explain the process by which he relate[d] his experience to the facts at hand in order to reach [his] opinion"); *compare Henderson v. Glanz*, No. 12-cv-00068-JED-FHM, 2014 WL 2761206, at *3 (N.D. Okla. June 18, 2014) (testimony was reliable where opinions were "based on [the expert's] training, education and 29 years of practical experience and the contemporary corrections industry standards and practices that existed at the time of the incident" as well as a list of materials the expert reviewed).

The Court acknowledges that Dr. Tindall's opinions are not scientific, such that the typical markers for reliability are not applicable to the Court's analysis. But this does not obviate Defendant's burden to demonstrate the reliability of Dr. Tindall's opinions, and for the majority of Dr. Tindall's opinions, the Court concludes that Defendant has not met his burden. *See Medina-Copete*, 757 F.3d at 1104 (concluding that expert's experience-based opinions were not reliable where the expert provided no explanation as to how his experience led to his opinions); *United States v. Wofford*, No. 17-cr-00085-JED, 2017 WL 5514176, at *8 (N.D. Okla. Nov. 17, 2017) (expert's opinions that were "based on his experience and body of knowledge of identification and memory issues" failed to "present a reliable methodology or explain how any such methodology [could] be reliably applied" to the case), *aff'd*, 766 F. App'x 576 (10th Cir. 2019).

### C.     Rule 403

Finally, the Government argues that Dr. Tindall's opinions should be excluded under Rule 403. [Doc. 66 at 8]. It asserts that her testimony (1) is vague or speculative; (2) lacks any probative value; and (3) is likely to confuse the issues by "creating a mini-

trial regarding whether the child/adolescent forensic interviewer and law enforcement employed best practices in interviewing Minor #1 and obtaining her identification of the Defendant."  [*Id.*].  Defendant responds that Dr. Tindall's opinions have probative value because his defense will attempt to highlight "law enforcement's incomplete, biased, and inadequate investigation" into Minor #1's allegation.  [Doc. 77 at 7].  He argues that Dr. Tindall's opinions "target both the alleged victim's memory associated with reporting the assault coupled with Dr. Tindall's knowledge, education, and experience about how forensic interviews of minor sex assault victims should be conducted."  [*Id.* at 8].  The Court's analysis is limited to the opinions surviving the Court's above analysis.

Relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403.  The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has "never required that evidence be 'probatively essential' to survive a prejudice inquiry under Rule 403."  *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011).  "To the contrary, [the] law *favors* admission of all relevant evidence not otherwise proscribed; thus, exclusion under this rule is 'an extraordinary remedy [that] should be used sparingly.'"  *Id.* (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999)).

The Court respectfully concludes, at this juncture, that the probative value of Dr. Tindall's supported opinions is not *substantially* outweighed by the danger of confusing the issues or misleading the jury.  Defendant anticipates challenging the credibility or believability of Minor #1's report, and expert testimony critiquing how the report was taken and investigated has at least some probative value.  Moreover, the Court is not persuaded

by the Government's argument that permitting the testimony will result in improper mini-trials about the propriety of certain interviewing techniques; that goes to the heart of Dr. Tindall's opinions, and to the extent the Government seeks to discredit those opinions, the Government will be permitted to cross-examine Dr. Tindall and/or offer conflicting evidence. The Court finds, at this time, the risk of improper mini-trials too remote to justify exclusion of the entirety of Dr. Tindall's opinions. Therefore, the remainder of the Government's Motion is respectfully **DENIED**. The Government remains free to object to portions of Dr. Tindall's testimony during trial, if appropriate.

### D. *Daubert* Hearing

At the conclusion of his Response, Defendant states that "[t]o the extent the Court may have any remaining doubts [about permitting Dr. Tindall's testimony], a *Daubert* hearing is necessary." [Doc. 77 at 9].

"A district court is not required to hold a pretrial Daubert hearing in order to make the[] determinations that Rule 702 requires." *United States v. Earls*, 129 F.4th 850, 862 (10th Cir. 2025). A court "is granted great latitude in deciding which factors to use in evaluating the reliability of expert testimony, and in deciding whether to hold a formal hearing," *Charley*, 189 F.3d at 1266, and "the manner in which the court conducts its Rule 702 analysis is left to the court's sound discretion," *United States v. Chapman*, 839 F.3d 1232, 1239 (10th Cir. 2016).

If a defendant seeks an evidentiary hearing, "he [bears] the burden of requesting one." *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009). But Defendant does not explain why a hearing is necessary or set forth what information he believes would be gleaned at a hearing that could not have been presented in his Response to the

Government's Motion to Exclude. *See generally* [Doc. 77]. Indeed, despite the Government highlighting Dr. Tindall's failure to tie her experience to her specific opinions, *see* [Doc. 66 at 7–8], Mr. Miller's defense of Dr. Tindall's opinions is perfunctory, asserting that her opinions are reliable by simply repeating, verbatim, the conclusory statements contained in Dr. Tindall's summaries, *see* [Doc. 77 at 4–5 ("Dr. Tindall's opinions are . . . reliable because they are based on, among other things, her 'prior experience reviewing documentation in over a thousand sex assault cases,' . . . 'the literature and training on forensic interviews['] . . . '[t]he research on trauma and memory['] . . . [and] on her 'experience, knowledge, and training' which are described exhaustively in her CV and supplemental report.")]. This is not enough, and Defendant is not entitled to a hearing to further develop and support his arguments when he did not put forth a robust argument in his written materials. *See Nacchio*, 555 F.3d at 1253 ("Courts are not disposed to allow litigants to have two or more bites at the proverbial apple."). Accordingly, the Court finds that it can appropriately exercise its gatekeeping function and rule on the Government's Motion to Exclude without a *Daubert* hearing. For the reasons set forth above, the Government's Motion to Exclude is **GRANTED in part** and **DENIED in part**.

## II.    Defendant's Motion to Exclude

Defendant raises two arguments challenging Agent Hammer's opinions: (1) his report does not comply with Rule 16 of the Federal Rules of Criminal Procedure, [Doc. 67 at 6]; and (2) Agent Hammer's opinions are not reliable and are not based on a sound methodology, [*id.* at 10].

### A.    Rule 16

Defendant first argues that the Government's Notice and Agent Hammer's report fail to comply with Rule 16 because they do not adequately set out Agent Hammer's specific opinions.  [*Id.* at 6].[7]   The Government disagrees.  It asserts that its Notice adequately informs Defendant that Agent Hammer "will provide his opinion as to the 'approximate locations of the target cell phones when they initiated contact with the networks.'"  [Doc. 76 at 4 (quoting [Doc. 67-1 at 12])]; *see also* [Doc. 67-1 at 12 ("SA Hammer will testify about the analysis he performed on the CDRs obtained for these target devices. . . .  Used in conjunction, the CDRs and a list of cell site locations illustrate approximate locations of the target cell phones when they initiated contact with the networks.")].

Rule 16 requires the Government to provide a written summary of proposed expert testimony that "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."   Fed. R. Crim. P. 16(a)(1)(G).   "The Tenth

---

[7] In this section of his Motion, Defendant also argues that Agent Hammer's opinions are "incomplete and . . . not reliable," asserting that Defendant's own expert takes issue with certain aspects of Agent Hammer's technique in forming his opinions. [Doc. 67 at 6].  It is unclear to the Court how this argument fits within the Rule 16 analysis.  "Although the summary required by Rule 16 provides the defense with some notice, the requirement of setting forth the bases and reasons for the witnesses' opinions does not track the methodological factors set forth by the *Daubert* Court."  *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1231 (D.N.M. 2013) (quotation omitted).  Regardless, the Court does not find any basis to exclude Agent Hammer's opinions due to the conflicting opinions of Defendant's expert.  Determining which side's expert witness to credit is solely within the province of the jury.  *See United States v. Hylton*, 308 F. App'x 262, 264 (10th Cir. 2009) (explaining that the jury, not the Court, weighs contradictory evidence and judges witness credibility, and noting that a "battle of the experts" must be resolved by the factfinder); *Gramberg v. Am. Alternative Ins. Corp.*, No. 20-cv-01030-RM-SKC, 2022 WL 4235010, at *2 (D. Colo. Sept. 14, 2022) ("battle of the experts" did not provide a basis for exclusion of expert testimony).

Circuit has interpreted this rule to require only a general description of the opinions and the bases and reasons for the opinions, such that the disclosure allows the defense to prepare for cross-examination." *United States v. Briscoe*, 703 F. Supp. 3d 1288, 1294 (D.N.M. 2023) (citing *United States v. Nacchio*, 519 F.3d 1140, 1151 (10th Cir. 2008), *vacated on other grounds by Nacchio*, 555 F.3d 1234). "However, the government must disclose the specific opinions that will be elicited and not simply provide a general description of the topics that will be covered." *Id.* Failure to comply with Rule 16 may result in discovery sanctions, including but not limited to exclusion of undisclosed evidence. *See United States v. Brown*, 592 F.3d 1088, 1090 (10th Cir. 2009) (citing Fed. R. Crim. P. 16(d)(2)).

The Court does not find the Government's Notice deficient under Rule 16. The Notice adequately informs Defendant of the opinions Agent Hammer intends to proffer. The Notice states that Agent Hammer examined cellphone records and determined which cell towers were used by the target phones, and then explains that Agent Hammer "will testify about the analysis he performed on the [call data records ("CDRs")] obtained for these target devices." [Doc. 67-1 at 12]. The Notice also explains how cell towers and cellphones interact and states that "[u]sed in conjunction, the CDRs and a list of cell site locations illustrate approximate locations of the target cell phones when they initiated contact with the networks." [*Id.*]. It then describes how this background information was used to identify and analyze the location data for Defendant's phones and vehicle. [*Id.*].

While these statements may not have been framed as explicit "opinion" statements, the Court finds that the Notice is sufficient to describe Agent Hammer's opinions, as required by Rule 16. "Rule 16 disclosures are not required to include

extensive and exhaustive level of detail and information." *United States v. Penn*, No. 20-cr-00152-PAB, 2021 WL 4818917, at *3 (D. Colo. Oct. 15, 2021) (cleaned up).  It is clear from the Notice that Agent Hammer intends to offer opinions and findings concerning the approximately locations of the phones and the vehicle.  Indeed, this case is analogous to *United States v. Brown*, wherein the government's notice informed the defendant that an expert would testify "that she compared the defendant's known fingerprints . . . with a latent fingerprint" found at the crime scene and that "the latent fingerprint [at the crime scene] is the defendant's fingerprint."  592 F.3d at 1089 n.2.  There, the Tenth Circuit found that the government's disclosure "substantially complied with Rule 16's requirements" because it provided notice of the expert's "analysis and opinion that the fingerprint found at the scene of the crime matched" the defendant's.  *Id.* at 1091; *see also United States v. Goxcon-Chagal*, 886 F. Supp. 2d 1222, 1254 (D.N.M. 2012) (finding compliance with Rule 16 where the government's notice "set[] out the general subject matter of [the expert's] proposed testimony and his background" and "set[] out the basis for his testimony").  Accordingly, the Court finds no basis to impose sanctions under Rule 16.

## B.    Reliability

Defendant next asserts that Agent Hammer's testimony should be excluded under *Daubert*.[8]  [Doc. 67 at 6].  Approximately four of the four-and-a-half pages dedicated to

---

[8] In his Motion, Defendant requests a *Daubert* hearing "so that the Court can hear testimony from Agent Hammer about his qualifications."  [Doc. 67 at 11].  But Defendant does not actually argue that Agent Hammer is unqualified to offer his opinions.  *See generally* [*id.*].    Accordingly, a *Daubert* hearing is not necessary to address Agent Hammer's qualifications.  *See Earls*, 129 F.4th at 864 (observing that a court has no obligation to make explicit findings on issue not raised in a *Daubert* motion); *United States v. Mathews*, 928 F.3d 968, 979 (10th Cir. 2019) (same).  Moreover, the Court has

this argument contain recitations of legal standards and discussion of other cases, as opposed to specific arguments concerning Agent Hammer's expected testimony. *See* [*id.* at 6–10]. With respect to Agent Hammer's opinions specifically, Mr. Miller argues that Agent Hammer's "granulization approach is not reliable, not supported by any type of science or generally sufficiently accepted as one [sic] in the relevant community." [*Id.* at 7]. He also argues that, based on *United States v. Evans*, 892 F. Supp. 2d 949 (N.D. Ill. 2012), and *United States v. Reynolds*, 626 F. App'x 610 (6th Cir. 2015), Agent Hammer's testimony is unreliable because "it appears that [Agent Hammer] bases his opinion on the whereabouts of Mr. Miller based on the nearest tower locations," [Doc. 67 at 10]. He argues that the "*Evans* reasoning . . . is directly applicable to Agent Hammer's proposed testimony." [*Id.*].

In *United States v. Evans*, the government sought to proffer expert testimony about the defendant's suspected location when he placed certain phone calls. 892 F. Supp. 2d at 952. Using a "granulization" theory, the expert identified the location of the cell sites used by the defendant's cellphone, each cell site's antenna, and the direction of the antenna's coverage. *Id.* He then "estimate[d]" the range of each antenna's coverage based on the proximity of other cell towers and "predict[ed]" where the cell towers' coverage areas overlapped. *Id.* Using these estimations, the expert then "estimate[d] the general location of" the defendant's cell phone when placing the phone calls in question. *Id.*

---

reviewed the Government's disclosures and is satisfied that Agent Hammer is qualified to testify on this topic based on his experience and training. *See* [Doc. 67-1 at 10].

The *Evans* court excluded testimony based on the granulization theory as unreliable. *Id.* at 955–56. Specifically, the court found that the expert's testimony was not based on scientific calculations; the expert had simply assumed that the defendant's cell phone had connected to the closest cell tower at the time of the call; the expert had not considered a variety of relevant factors in his estimations; and the granulization theory was "wholly untested by the scientific community" and was not generally accepted in the scientific community. *Id.* at 956–57.

In *United States v. Reynolds*, the government's expert witness used cellphone and cell site records to opine that other potential suspects could not have downloaded child pornography on the defendant's computer because their location data was inconsistent with the alternative suspects being located at the defendant's home at the time of the downloads. 626 F. App'x at 613. The defendant in that case relied on *Evans* to argue that exclusion of the government's expert on historical cell site analysis was necessary. *Id.* at 615. However, the *Reynolds* court found *Evans* distinguishable because the expert in *Reynolds* had not relied on "the questionable assumption that each call connected to one of the nearest towers." *Id.* at 617. Rather, the expert used historical cell tower data to *exclude* the other subjects from the particular sector in which the defendant's house was located. *Id.* And since there were "identifiable, measurable, and scientifically accepted factors that determine a cell tower's maximum coverage range," such that the cell site data could reliably show the absence of the other subjects from the residence, the Sixth Circuit found that the district court did not err in permitting the expert's testimony. *Id.* at 617–18.

To the extent Defendant argues that *Evans* and *Reynolds* "support the proposition" that Agent Hammer's testimony is not reliable, [Doc. 67 at 10], the Court respectfully disagrees.    Although Defendant argues that "it appears [Agent Hammer] bases his opinion on the whereabouts of Mr. Miller based on the nearest tower locations," [*id.*], the *Evans* court did not exclude opinions because they tied the defendant to the nearest cell tower, but because the opinions were based on an untested methodology reliant on a number of assumptions, *see Evans*, 892 F. Supp. 2d at 955–56.    Defendant does not explain his basis for believing that Agent Hammer uses the same assumptions criticized in *Evans*.    *See generally* [Doc. 67].

Here, Agent Hammer relied on CDRs in forming his opinions, which "accurately record the cell tower that provided the best service to the cell phone" and "that particular cell tower's footprint will provide the approximate location – not the exact location – of the cell phone at the time the record was generated."  [Doc. 67-1 at 11]; *see also* [Doc. 67-2 at 3 ("[T]he CDRs capture the [cell site] which served the embedded cellular modem when the contact with initiated with the network.")]; *see also* [*id.* at 7–9 (summarily explaining how cell site information is used to calculate the "distance of a mobile device from the cell site based upon [a] . . . measurement taken during a call, text message, data session, or other network event")].

"Courts and scientists alike have 'widely accepted' the common practice of determining a cellphone's 'general location'—with critical emphasis on *general*—by identifying the specific antenna that the phone connected to at a specific time."  *United States v. Reynolds*, 86 F.4th 332, 347 (6th Cir. 2023) (collecting cases); *see also United States v. Morgan*, 45 F.4th 192, 202 (D.C. Cir. 2022) ("Courts have generally found

historical cell-site analysis to be reliable and admissible.").  Indeed, another district court within the Tenth Circuit has rejected a Rule 702 challenge similar to the one mounted here.  *See United States v. Butler*, No. 21-cr-20027-JAR, 2023 WL 1795571, at *7 (D. Kan. Feb. 7, 2023) ("Unlike in *Evans*, SA Williams did not use a granulization theory here, he did not opine about the cell phones' precise locations, and he did not assume that each phone connected to the nearest tower in performing his analysis.  Instead, SA Williams testified in detail about the methodology he used to determine the cell phones' general locations, which included CDRs, a tower list, and information about pertinent locations involved in the investigation. . . .  The Court finds that his methodology passes muster under Rule 702 and *Daubert*.").  Like the court in *Butler*, this Court concludes that Agent Hammer's opinions and methodology are sufficiently reliable, and his opinions will not be excluded under Rule 702.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)    The United States' Motion to Exclude Expert Testimony [Doc. 66] is **GRANTED in part** and **DENIED in part**;

(2)    Defendant's Motion to Exclude Potential Expert Agent Ryan Hammer, or in the Alternative for, a *Daubert* Hearing and Response to the Government's Notice Regarding Other Potential Experts [Doc. 67] is **DENIED**; and

(3)    This Order shall be filed under Level 1 Restriction and viewable only by the Parties and the Court for a period of 14 days.  On or before **May 13, 2025**, the Parties shall meet and confer regarding proposed redactions that are necessary to protect the sensitive information of any minors related to this

case and shall file their proposed redactions under Level 1 Restriction.  After the Court receives and reviews the Parties' proposed redactions, the Court will enter a redacted order publicly on the docket.

DATED:  May 6, 2025                              BY THE COURT:

_____
Nina Y. Wang
United States District Judge